Welcome to the Fifth Circuit. First day of oral arguments. We just have two arguments this morning. I assume each of you are familiar with our lighting system. When you get to the end of your time, finish your sentence and we will let you know if you can go forward beyond that. Those who are appellants today, make sure you don't save something for your rebuttal that you haven't addressed in your opening, because rebuttal is for rebuttal only, and your other friend on the other side may not help you out by raising an issue that you're trying to save. Well, we'll start with the first case, United States v. Rodriguez-Sanchez, Ms. Greenberg. May it please the Court, Laura Greenberg for Appellant Guillermo Rodriguez-Sanchez. Good morning, Your Honors. Good morning. Mr. Rodriguez was convicted after a jury trial of importation of controlled substances into the United States. Customs officers found approximately 5,500 grams, or the equivalent of about 12 or 13 pounds, of controlled substances in a box hidden in the engine compartment of the truck Mr. Rodriguez drove to the port of entry. On appeal, we raise four issues. Primarily, we argue that the evidence was insufficient to show that Mr. Rodriguez knew of the hidden drugs, but at best, this was not a strong case for the government. Because of the weakness in the evidence for the government, the government did not play fair in this case. The first unfair blow was the government's repeated emphasis on Mr. Rodriguez's having a single key with him at the port of entry that day. Let me make sure I understand the context of this. The officer is testifying was qualified as an expert, was he not, on drug trafficking procedures? That's correct. How does that affect your argument under Rule 704? Some of the case law does deal with experts as well, but he was describing a pattern in drug trafficking, in his drug trafficking experience. So where does that leave us on trying to decide if this was error and whether it's plain error? It's not all clear to me how this was preserved. This court has held that it's proper to have expert testimony on the method of operations unique to drug businesses, but what's on the improper side of that line is testimony from an expert about the characteristics about the drug courier himself, and then drawing a direct line between that characteristic and the defendant, and that's exactly what happened in this case. Officer Morales was not talking about methods of operations unique to the drug business. He was describing smuggling at the border and that for some reason it almost always involves a single key, and then he went on to say, which is improper drug courier profile testimony, that the agents consider this an indicator that there's something going on. Ms. Greenberg, were you trial counsel in the case? No, Your Honor. Do you know whether trial counsel objected during trial to Agent Morales's testimony about the single key? There was an objection when Agent Morales crossed the line and made explicit what is implicitly improper about this type of testimony. Is there a record citation for a kind of key specific objection? I'm just trying to figure out if we're reviewing for plain error or abuse of discretion, or I'm just trying to clarify what's in the record about an objection to the key testimony. I believe the objection was at record site 512 or 511. The bulk of the testimony of Officer Morales was at 509. What was the basis of the objection? Trial counsel objected based on pre-trial. He made reference to a pre-trial ruling. I believe he said line witness, and then there was a bench conference. Unfortunately, the bench conference did not make it on the record. I looked at what the motion was that the district judge had sustained before the trial began, I suppose, but at least before this objection was made, and it is specifically talking about saying that any particular witness is lying if the evidence is inconsistent with what that person was saying. I'm not sure that that is actually the objection you're making now, though, is it? The objection that the government would allude to a witness lying, the objection I'm making now is within the realm of implicit comment on the state of mind of the defendant. Excuse me, your argument really is, and again, I'm not saying you're lying. I'm just saying that I see this differently, and you correct me. You're arguing that this focus on one key somehow characterizes your client as somebody involved in drug trafficking, and that he crossed, it doesn't seem to me it's the line of lying. It's the line of speaking too directly to whether somebody who has just one key must be a drug trafficker, and it doesn't seem to me that was the objection at trial. The objection at trial, I agree, your honor. The objection at trial was a reference to pre-trial motions, pre-trial rulings, and I believe he said lying witness. I know in pre-trial, when the motion in limine on lying witnesses was being argued, the trial judge at that point admonished the government specifically to not put on witnesses that testify because the defendant meets a profile that that means he knows. Did the agent explain why a single key indicated drug trafficking? I mean, did he say why these people that sell drugs always have one key? No, your honor, and I think that's important. If it was testimony, expert type testimony uh about the method of operations of the drug business, you might expect that he would have explained how this uh how this fits into the drug business. What was the jury supposed to uh deduce from that test from the testimony that uh 65 percent of the people that we arrest have one key and 35 percent have four keys or five keys? If it doesn't have any direct tie to the drug industry, what what was its relevance? I'm trying to figure out. I think the only thing that the jury could have taken from that testimony was that drug smugglers at the and so that means that because Mr. Rodriguez had a single key, he was a knowing drug courier. There could be no other purpose for this testimony, but he didn't follow it up by saying the people who own the drugs have one key for the driver only because the key the drugs are locked up somewhere else. I mean, he didn't explain. No, your honor, he didn't explain it, and I think this actually helps our argument that this is improper drug courier profile testimony because it wasn't within the realm of expert testimony that would have allowed the jury to understand the method of operations of a drug business, something that might be proper. But where's that line? It seems to me that you use a phrase like this, and it's what Morales said. He doesn't seem to know why they have only one key. For some reason, most of them have only one key, but that's an indicator to us. You start looking at it a little bit harder when some of these indicia of drug trafficking are first observed. It seems to me that at least in part, that's what he was qualified to testify, qualified by the judge in declaring him an expert, that he was . . . it was one of the why the investigation pursued along the line that it did. I mean, this is a difficult issue. Just help us a little bit more with it. Yes, your honor. He was qualified to testify and give opinions based on his specialized knowledge, and he did start out by describing that specialized and what would have been proper would be the testimony of Officer Duran, who also testified as an expert witness. He could have talked about a variety of things that would have been appropriate, and sometimes there is a fine line, and a good example of that is in the case of Gonzales Rodriguez cited in the party's briefs. In that case, for instance, the court said, and this was on plain air review, the court said, it's proper to testify that drug traffickers try to hide contraband in legitimate loads, but when the investigative agent said, the first thing I look for is, was this a legitimate load, and that was improper. So sometimes there is a very fine line between what is proper expert testimony and what is improper drug courier profile testimony, but I don't think this is even in a fine line territory because Officer Morales wasn't testifying more broadly. He could have. He was qualified to do so, but he was an investigative agent. He was called down after drugs were found, so he wasn't even testifying about background that might have explained why the investigative agents honed in on a suspect, why they suspected there may have been drugs in the car. This court has said that's proper testimony of this nature. Drugs had already been found. He had been called down to investigate specifically whether Mr. Rodriguez was a knowing courier at that point. You may think this is your best argument. You're running out of time. If you want to address some other issue that you want to raise today. Yes, Your Honor. There were a couple of other issues that we felt were particularly unfair blows in this case. I'd like to talk about the spoliation of the evidence instruction for just a moment. This court has held that there's typically a requirement of bad faith, and I think this case presents the opportunity, and I hope the court takes it, to delineate what bad faith means in the context of a case like this. The government appears to have argued below and in this court, and I think this court has generally required that bad faith and spoliation means bad motive, so it means that the spoliator got rid of the evidence specifically to prevent the other side from being able to make use of it. That is too strong a showing to justify the sanction that we asked for in this case. There's no question that there was spoliation. The truck was intentionally sold at a forfeiture auction. The government had an order telling it to preserve the truck. The question might be, what was the government's motive? But again, I don't think that we should have to show that the government purposefully sold the truck. Where's the harm? In other words, you must have some basis for wanting to search the truck. What did you hope to find? How was this going to exonerate him, or how is it going to help this case one way or the other? Well, this was an important piece of evidence for the defense. Why? Because we needed to be able to show that somebody could have accessed the engine compartment of the truck without Mr. Rodriguez's knowledge, and we had testimony that explained the ease with which someone could have replaced this engine part. It wouldn't have taken a lot of time. Okay, we can see that, but if you can see that that might have happened, I mean, how does that affect the ultimate verdict in this case? I think specifically because we needed the evidence that the anti-theft shield was not in place that would have allowed somebody then to access the engine compartment without the key could have gotten into the engine compartment of the vehicle. How did the DEA, the immigration authorities, get into the truck to begin with? I mean, he was driving the truck, right? Correct. Did they have to have the key to get into the truck to lift the hood to see what was going on? Mr. Rodriguez was compliant at an inspection and popped the hood from the hood. I think my time is up. Well, you may still be answering his question. You can finish that answer and then you're done. Okay, so yes, so they had a key. Essentially, Mr. Rodriguez was driving the vehicle when he went to secondary inspection and the officer asked him to pop the hood, and he did so. So you didn't need a key to open the hood? You didn't, no, and I want to perhaps, the key, you don't need a key to open the hood. I know some vehicles might have that feature, but you need to have access to the driver's compartment of the truck to push that button or unlatch the hood, and so either you had to have a key to get in there or you had to force entry, and that's another thing that an expert defensive witness could have testified to had we had the opportunity to inspect the vehicle. All right, well, we'll see you back up here in a few minutes. Thank you, Your Honor. May it please the Court. There was no objection to the testimony of the one key as being profiling evidence. The argument is that within his motion in limine, which is document number 27, pages 73 to 77, but the motion in limine said that there should be no questions of defense witnesses where they compare their testimony to a government witness and they say, was the government witness lying? There's nothing in this motion. Well, Counselor, it seems to me that the then defense counsel objected to a question like that. Yes. You were just asked, not you, I don't know who the questioner was, maybe it was you, says, I was questioning the defendant about the drugs in the truck, if anyone else had driven it, if it had been to a I could tell, in my opinion, he was trying to mislead me by telling me, you know, his parents, in a way, his explanation for the single key. He was certainly getting into the area that the defendant was lying to me at the scene, not another witness at trial. But then the objection is, based on our motion in limine, the objection is that commenting on the veracity of a long string, called commenting on the veracity of a witness, to be a comment on profiling testimony. And then after that objection . . . But would you agree that he was asking a question about whether, isn't it likely that, or he was stating, it seemed likely to me the defendant was lying to me out at the scene of this search? He was, why didn't you, the question was, why didn't you initially tell him about the drugs? And he starts on a long answer, and then he says, when I got to the key, in my opinion, he was trying to mislead me about his parents opening the house for him on page 511. And it does seem to me that that's probably what triggered the objection that time, because it was coming close to saying at least the defendant was lying. You don't need to get into whether that's what the motion in limine was about. There is no record, the other opposing counsel said, of what was said at the bench? That's correct, Your Honor. Is it, was it just not described, transcribed, or was it not recorded at all? The transcript just says bench conference, and there's no indication about it being transcribed. Okay, so you think we're here on plain error review? I strongly urge that. You don't just think it, you're convinced, huh? Well, if you're going to object on profiling, right, the key testimony is on 511. In all my experience, most loads have one key, which is an indicator to me. If you're going to object as to profiling, that's the place to object as to profiling, not the, not as to the misleading comment later on, which is after. Let's look at it as plain error. The argument is that by this statement, he is saying, this witness is saying, that someone who has only one key is probably a drug trafficker. No, he's saying that someone who has one key, the story about having one key is trying to mislead me because of this fantastic exclamation. Well, the previous page, though, he's saying the one key pattern is a drug traffickers. This particular. It's an indicator to us to look harder. Right. Right. So just take it on that basis. Let us say we see this question in this line of testimony under plain error review as asserting through an expert that somebody who's ads on a one key is probably a drug trafficker. Why don't you walk through the plain error factors? He doesn't say the one key is probably a drug. In all my experience, most loads have had one key, and this is an indicator to us to look harder. What I'm asking you to do is, what I'm asking that at least one member of this court might view that as an assertion that somebody has only one key. So go through the plain error factors for me. Why do you still succeed if we see that as the nature of the import of the testimony? Well, first of all, it's not a comparison of characteristics to a generic profile. It's not like Gonzalez Rodriguez, which they're relying on, which is much more blunt, that the majority of people arrested at checkpoints are drug couriers. There's no direct line towards drug couriers. It's not like the other case that they rely on, Gutierrez Farias, whereas drug organizations look for transporters who have knowledge. They're directly pointing to couriers, directly pointing to knowledge, which is not the case here. Again, there's a fine line between expert testimony comparison methods of operation to the conduct of a generic profile. So my argument would be on plain error. This is like the Moran case. In Moran, the agent says, we generally catch the middleman. Well, you could make the same argument there. If because he was caught, then therefore he was a middleman with that was not profiling. In Inkler, the agent testified that the defendants carried money banded in $1,000 amounts in a manner similar to drug traffickers, and that was not found to be profiling, even though you could say because they banded that that way they were couriers with knowledge. So the argument on plain error is that it could be like these two cases, Inkler and Moran, and it has to be so plain and obvious that the district court was was derelict in countenancing it, and it's not like the blunt generalizations of Gonzales-Rodriguez. Having no criminal history means they're a courier. Carrying a legitimate load means they're a carrier. Did he explain any further why a single key was such an indicator? No. No, Your Honor. What was the jury to think? I mean, what was the jury to think about the testimony if there was no tying of that testimony to the fact that it relates to drug dealing? I mean, to the recent drug dealing. Well, because of the expert testified to that, there is no direct tie, and there is no direct statement of knowledge. Once in Gonzales-Rodriguez were just unhelpful generalizations that were that were overbroad and wrong. And then the follow-up is the plain error analysis is I completely disagree as to the strength of this case. These were, and then we didn't go into the evidence, but there was a series of incredible explanations. The quantity of drugs led to the inference. There's a lack of surprise. There were inconsistent statements. There was a direct lie about a previous trip into the United States with a car. And then he says, well, I drove it back to Mexico, and it broke down, and then I sold it. But that car was registered in the United States five days after. Let me push pause and take you to the spoliation. Step me through how it happened. How does the government sell the defendant's truck in the face of this explicit court order to leave the truck, preserve the truck in this unaltered state? How does that happen? I wish I could take you through more. There's a statement, there's a notification that was filed by the prosecutor, and it said that he was unaware, and the agent was unaware of the forfeiture and the sale. But that doesn't get you to my question. I tried to reach the prosecutor. He was in Bosnia on detail. My question to him was, what happened? Why didn't, when you got the text order to preserve the car, why wasn't that transmitted to the case agent? And I don't know why. I don't know why it wasn't. Apparently it was a negligent thing or an inadvertent thing. So negligence rather than bad faith. That's the argument. And we have a finding by a one-judged district, familiar with counsel, that there was no bad faith. And then at the charge conference, she says, I think we all agree that this wasn't a bad faith situation. That's at 798. And the defense didn't take issue with that. And she says it's just a misdivision. Excuse me. I'm sorry. But the point I'd like to make about the spoliation instruction was the spoliation instruction allowed the jury to draw an adverse inference if the government could have produced the evidence. So that's not a correct statement of the law. There's no requirement of bad faith or bad conduct as they argue that bad conduct is different from bad faith. I think under Wise, Wise talked about the standards being bad faith conduct, putting bad faith first. And the cases in the circuit talk about bad faith. The cases in other circuits talk about bad faith and not bad conduct. And the dictionary definition of bad faith is an intentional dishonest act. There's nothing in this record that it was an intentional dishonest act. And again, the instruction that was given allowed for an inadvertent or accidental destruction to be entitled to the inference. Was any argument or evidence in some other form put on by defense regarding their inability to address this point? Did that get introduced in front of the jury? Was there an argument? Or even like a closing argument. We were not able to determine if this could have made that argument, but your honor, their argument at the. I'm just asking was that made? I'm sorry? Was that made? Was some sort of explanation given to the jury in some form that at least got the idea in front of the jury that they couldn't check this particular point out? It was put in front of the jury in terms of evidence, but not in terms of argument. So what evidence do you mean? It was put in front of the jury that the court granted the motion to preserve that the vehicle was sold at auction. That was all before the jury. And then he also testified that they had full access to photograph, manipulate, and inspect the vehicle for as long as they wanted. And that's what the district court also seized on. That you had the chance to inspect this vehicle at that time to manipulate it. If your theory of the case is that someone, that because of a malfunction in the hood, someone could put the drugs in the manifold, it would seem to me that that would be one of the first things you would look at to see if the hood latch was damaged. But the point I was trying to get to is it wasn't a key feature of the defense. Remember the defense was I went to my sister's house and my brother-in-law's house. I left the keys at my sister's house. So they didn't need an explanation as to how anyone planted the drugs. Their theory of the case was while he was driving around with his sister, the brother-in-law took the keys, opened up the car. What was the disputed issue of fact about the location of the drugs that would have been resolved if the truck had been preserved? There was no disputed fact about the location of the drugs up there. And I mean I get the hint or maybe the expression that if he could have looked at the truck, it would have shown that it was not visible, that the alteration of where the drugs were was not visible and consequently would not have been charged to his knowledge. Is that correct? Well he certainly could have made that. And then there was a suspicion. What is this all about? What is all the fuss about? I don't know. That he, how has he been prejudiced about this? I don't believe that he has been prejudiced by it. Well what is his argument I'm saying? I mean I don't understand. His argument is that if the hood latch, if the shield on the hood latch was damaged, then someone could have planted the drugs in the car. There's also testimony from their expert that the engine had to be running in order to attach the intake manifold after you put the drugs in there. So you still have to get into the car by a key. So the argument is that the truck would have shown damage to the hood on the outside, not on the inside where the drugs were located. That would have been our argument that there was no damage to the hood latch because there was no visible damage to the shield on the hood latch may have malfunctioned, may not have been there, so that you could jimmy the hood open and put the drugs in there. But like I said that the theory of this case is not it is not a planting of the drugs by strangers. It's that his brother-in-law planted it with the key that he was left at his sister's house. So it really has no relevance as to Gilder Edison's. You got anything else? One quick question if you don't mind. As I'm looking at the cases that discuss the circumstantial evidence that tends to show guilty knowledge. Yes. It seems that honestly cases are kind of all over the place and that the government can point to that a defendant might have had guilty knowledge. His demeanor was calm. His demeanor was not calm. He was surprised. He was strangely not surprised. He was unusually nervous. He was unusually not nervous at all. And can you kind of steer us to it just seems that virtually anything can be seized upon as evidence of guilty knowledge. I wish I could think of it right now. I'm sure Judge Jolly knows the case where exactly what you say in footnotes. Nervousness, not nervousness. But Judge Wiener wrote that opinion I think in which he showed how the indication of drug possession was contradictory on every response that you could possibly make if an officer came up to you. But the lack of surprise here is also just a small part of it. Valuable cargo. The story that I'm looking for a forklift. If I happen to run into a forklift then I'm going to get pricing on it. That's an implausible story. There's no reasonable time or opportunity to get the drugs out. That he's returning boots. He's traveling hundreds of miles to return his boots. About his mother's door opening service. And then as I said the direct lie about previously entering and not admitting that the vehicle was left in the vehicle. There's just a few points I'd like to make. Actually more than a few but I don't think I have time. This I believe the objection did preserve the drug courier profile issue. It was when the testimony crossed the line that there was an objection. And I think in that you have to look at the lead up to the whole final statement by the officer that in his opinion Mr. Rodriguez was trying to mislead him and that is kind of the nature of drug courier profile testimony. Because you have to look at it in terms of context and usage and I think that the objection at the point it was encompassed the entire testimony. So I think it's preserved but even on plain air opposing counsel is incorrect. This is not like the Marin case where actually there was some testimony that crossed the line. This was an investigating officer who testified that there was indications that a drug courier characteristics and he tied it directly to Mr. Rodriguez. It wasn't a case where with bundles of money where there's just general testimony and then it may be a fact that is or is not in the case. This was directly tied and I believe Judge Jolly asked you know what was the jury supposed to make of Officer Morales's testimony and that has to do with the usage that was made of this testimony. The prosecutor in closing told the jury you can find that Mr. Rodriguez knew there were drugs in the truck because you know how drug smuggling works. You heard from the expert. There was a single key. So I think that even under plain air review this is much more like the Gonzalez-Rodriguez. The first thing I look for is a legitimate load. The cases where the person has his wife and children in the car with him so he must be a drug smuggler. There is one factual inaccuracy that I just must correct before I forget to. The testimony was not that the car had to be driven in order to make this switch of these this air intake manifold. It did not have to be operated to make the switch. So it's important that somebody could have accessed the engine compartment without the key made this switch and it and we think that's what happened. Yes. What do you say about he says that wasn't even the theory. If the theory was that his brother-in-law or his sister or somebody that stuffed the drugs in there somewhere. I think there that was a theory in the case because the brother-in-law specifically had the opportunity had access to the key um that he was a likely uh suspect but obviously expanding the the list of people who could have had access was important evidence that we could have put on. Any evidence that he ever got out that ever got out of the truck at the time that it was being inspected by the officers so that he would have observed essentially what they were observing? No your honor he was not present when the officers were inspecting the vehicle you know looking inside the engine compartment doing what they do with the x-ray and the drills. He was waiting in passport control so he uh he had no opportunity to observe that. And as far as the spoliation just a couple of points. We did have an opportunity to inspect the the truck three weeks after our client was indicted. Trial counsel went out to take form the impression that we were going to need an expert to see if there was evidence of tampering. I don't think it's it's fair to say because we had this initial opportunity that there's no um there wasn't a need for further investigation. It's actually what prompted our seeking and obtaining an order requiring the government to uh to preserve the truck. All right counsel thank you. Thank you.